IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SALLY A. SUNDEEN,

                   Plaintiff,                 OPINION AND ORDER

    v.

                                       08-cv-649-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Sally Sundeen seeks reversal of the commissioner's decision that because she is not disabled, she is not eligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A).

Plaintiff contends that the administrative law judge failed to assess whether her lupus and myasthenia gravis met or equaled an impairment by the Social Security Administration, but relied solely on the vague and incorrect testimony of the medical expert.  I conclude that although the administrative law judge failed to identify the specific listings that he considered and gave only a minimal explanation of the basis for his conclusion, he managed

1

to build a sufficient bridge from the evidence to his conclusion.  His decision is no model but it suffices.  More to the point, plaintiff has not come forth with substantial evidence showing that she meets or medically equals a listing.  Although a diagnosis of lupus and myasthenia gravis is a serious matter, the evidence in this record shows that plaintiff was fortunate enough to have only mild symptoms, at least during her insured period. Remanding the case would exalt form over substance when it is obvious from the record that the administrative law judge reached the correct decision.

Plaintiff also contends that the administrative law judge did not properly assess her credibility or residual functional capacity, failed to consider the effects of her obesity on her other impairments and crafted a vague hypothetical at step five, thereby eliciting unclear testimony from the vocational expert.  I find that the adjudicator made a proper assessment of plaintiff's credibility and residual functional capacity and that any error he may have made in failing to consider plaintiff's obesity was harmless.  Apart from plaintiff's general assertions, the record contains no evidence showing that plaintiff's obesity impaired her ability to work.  As with the listing criteria, remand for explicit consideration of plaintiff's obesity would not affect the outcome of this case.  Finally, even if an erroneous hypothetical from the administrative law judge led to unreliable testimony from the vocational expert, that error is harmless because the adjudicator did not rely on that particular testimony in reaching his step five conclusion.

2

For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on May 20, 1985.  She completed high school but has no past relevant work experience.  AR 19.  However, she worked as part-time cashier at a gas station from August 2001 to July 38, 2004.  AR 114.

Plaintiff filed applications for disability insurance benefits and supplemental security income on August 18, 2005, alleging that she had been unable to work since October 1, 2002 because of lupus and myasthenia gravis.  AR 14, 106.  In a function report submitted with her application, plaintiff indicated that on some days she felt well enough to use the computer, watch a movie and talk on the telephone.  AR 113.

The relevant time period for plaintiff's disability insurance claim is the period between her first insured date of July 1, 2003 and her last insured date of March 1, 2006.  The relevant time period for plaintiff's application for supplemental security income is August 18, 2005 through February 29, 2008.

3

After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on December 5, 2007 before Administrative Law Judge Roger W. Thomas.  The administrative law judge heard testimony from plaintiff, AR 372-99, her mother, AR 399-414, a neutral medical expert, AR 414-17, and a neutral vocational expert, AR 417-22.  On February 29, 2008, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 14-21.  This decision became the final decision of the commissioner on September 11, 2008, when the Appeals Council denied plaintiff's request for review.  AR 4-6.

B.  <u>Medical Evidence</u>

1.  <u>Treatment before first insured date of July 1, 2003</u>

In October 2002, plaintiff saw Dr. Thomas Betka for joint pain, headaches and a rash. AR 330.  Tests showed a positive Antinuclear Antibody of 9.57 and a slightly elevated sediment rate of 34.  AR 197, 326.  Suspecting that plaintiff had lupus, physician assistant Michael Brietenfeld referred her to Dr. Marlon Navarro, a rheumatologist.  AR 326, 328-29.

Plaintiff saw Dr. Navarro five times between October and December 2002.  Tests confirmed that she had lupus, and he prescribed prednisone.  However, Dr. Navarro did not detect joint inflammation and a magnetic resonance imaging scan of her brain was normal. He referred plaintiff to the Mayo Clinic for a second opinion.  AR 162-195.  On January 2,

2003, Dr. Ann Reed, a rheumatologist at the Mayo Clinic, diagnosed systemic lupus erythematosus. AR 240-41. Plaintiff received no further treatment over the next 10 months.

2. Mayo Clinic, January 2004 to March 2005

Between January 2004 and March 2005, plaintiff saw Dr. J.C. Stevens, a neurologist, five times and spoke once with him on the telephone. She also saw Dr. Steven Ytterberg, a rheumatologist, on two occasions in January and February 2005.

- January 2004: Stevens diagnosed lupus and myasthenia gravis, a neuromuscular disease that manifests itself in serious muscle weakness and fatigue. Lupus "relatively inactive" but plaintiff reported difficulty climbing stairs, weakness in hand muscles after typing, jaw muscle fatigue, drooping eyelid, occasional blurry vision and difficulty holding hands above head. Electromyography testing revealed neuromuscular transmission defect, possibly caused by secondary myopathy (muscle disease). AR 234, 259.

- September 2004: Plaintiff reported drooping eyelids and arm and leg weakness. Examination revealed mild facial muscle weakness, fatigued deltoid muscles, mild to moderate weakness of wrist and finger extensors, moderate weakness of hip flexors and mild weakness of tibialis anterior muscles bilaterally. Strong quadriceps and gluteal muscles. Normal nerve conduction studies and repetitive stimulation tests. AR 218, 278.

- December 15, 2004: Because muscle biopsy revealed Plaqueril induced myopathy, plaintiff stopped taking the medication. AR 208, 210, 263.

- January 21, 2005: Stevens wrote that plaintiff looked better than she had in quite awhile—could stand up easily from sofa, walk easily on toes and heels and squat. Strong arm and leg muscles. Because plaintiff reported some depression, Celexa prescribed. AR 208. Plaintiff also saw Dr. Ytterberg and reported joint pain. Ytterberg found her myasthenia gravis and lupus to be relatively quiet. Voltaren prescribed. AR 211.

5

- <u>February 23, 2005</u>:  Ytterberg noted a few mouth sores but nothing else to suggest active lupus.   Prescribed Naproxen because Voltaren was not helping.  AR 207.

- <u>March 16, 2005 telephone call with Stevens</u>:  Myasthenia gravis continued to be asymptomatic.  Naproxen was helping a little bit.  Jaws tired after eating a sandwich and three kilometer walk was too much.  Weakness in legs after walking three steps.  AR 206.

- <u>March 29, 2005</u>:   Stevens noted plaintiff felt somewhat better and that antidepressant and ibuprofen helping.  AR 204.

The record shows that plaintiff did not receive any treatment between April 2005 and

November 30, 2005.

3.  <u>Dr. Paul Goellner, Duluth Clinic, November 2005 to January 2007</u>

- <u>November 30, 2005</u>: Revised medications because plaintiff in pain from her lupus.  AR 301-302.

- <u>January 4, 2006</u>:  Goellner wrote letter to plaintiff's attorney stating that he was not capable of speaking with authority on plaintiff's functional capacity.  AR 299.

- <u>February 27, 2006</u>:  Although plaintiff was concerned that her lupus was worse, Goellner stated it was in questionable state of activation and noted questionable myasthenia gravis.  Referred to Dr. Robert Leff, rheumatologist.  AR 207-08.

- <u>March 15, 2006</u>:  Leff noted no evidence that plaintiff had lupus.  Recommended Sulindac for aches and pains.  AR 354-56.

- <u>January 22, 2007</u>:  Goellner saw plaintiff post motor vehicle accident.  She reported generally feeling quite healthy before accident.  No medical care required.  AR 359-60.

6

C.  Consulting Physicians

On November 23, 2005, state agency consulting physician Dr. Zhen Lu assessed plaintiff's physical residual functional capacity, noting that plaintiff had been diagnosed with lupus and myasthenia gravis, status post thymectomy.  He concluded that plaintiff could lift 10 pounds frequently and 20 pounds occasionally; stand or walk six hours in an eight-hour work day; and sit six hours in an eight-hour work day with no postural limitations.  AR 286-93.  On April 10, 2006, state agency physician Syd Foster reviewed the evidence and affirmed Dr. Lu's November 23, 2005 residual functional capacity assessment.  AR 285.

D.  Hearing Testimony

At the beginning of the hearing, plaintiff's attorney indicated that plaintiff met the listings for lupus and myasthenia gravis.  Plaintiff testified that she stood five feet five inches tall and weighed 182 pounds.  AR 372.  She testified that she was the primary caregiver for her six-week-old child but that she had never held a full-time job.  AR 373-74.  Plaintiff testified that she had good and bad days.  AR 375.  She testified that she had a paper route for most of 2007, which she did with her mother or father.  AR 373-74.

Plaintiff testified that she can walk only six blocks because of muscle weakness and fatigue.  She stated that she can feed, bathe and dress herself with some difficulty.  AR 376.  She can not hold her hands up for a long period of time to wash or brush her hair.  When

her lupus flares up, she can not grasp things, write, type or button her shirt.  These flareups occur about 15 to 20 days out of each month.  She has been able to lift and carry her child, who weighs about 7 pounds, but it is getting more difficult as her baby gets bigger.  AR 377, 387-90.

Plaintiff explained that her symptoms of lupus are joint pain, fatigue and a facial rash and that her symptoms of myasthenia gravis are muscle fatigue and general fatigue.  AR 381. She testified that both diseases were treated with steroids.  AR 382.  Plaintiff testified that she had a thymectomy in February 2004.  AR 387.

Plaintiff's mother testified that plaintiff lived with her and worked part-time in her gift shop.  AR 401-03.  She testified that plaintiff had two or three really bad days a month. AR 413.

The administrative law judge called Dr. Andrew Steiner to testify as a neutral medical expert.  AR 414.  Referring to the medical evidence in the record, Steiner testified that plaintiff had a past history of myasthenia gravis with a thymectomy performed in February 2004 and that she had some mild to moderate weakness in February 2004.  Steiner indicated that otherwise, strength testing had been essentially normal.  He noted that nerve conduction studies were negative and that repeated examinations, including repetitive stimulation of the eyelids, had been unremarkable.  He also indicated that there were some signs of myopathic disease believed to be caused by Plaquenil, which was discontinued.

8

Steiner concluded that the findings in regards to plaintiff's myasthenia gravis were minimal.

Steiner testified that plaintiff had lupus but that there had been no recent activity of the disease and that the more recent reports had called the diagnosis into question. AR 414-15. He noted that she had ongoing joint pain but no synovitis, loss of range of motion or inflammatory changes. He testified that there was no evidence in the record of any fine motor compromise. Further, he noted that plaintiff had no pulmonary, vascular, liver or bowel involvement caused by lupus. AR 416. Steiner testified that plaintiff did not have any impairment that met or equaled a listed impairment because of the paucity of actual findings in the record. He concluded that plaintiff could perform sedentary work with no exposure to concentration of pollutants. AR 417.

The administrative law judge called Edward J. Utities, a neutral vocational expert, to testify whether an individual of plaintiff's age, education, work experience and the residual functional capacity to perform sedentary work with no exposure to a high concentration of pollutants in the air could perform jobs that existed in significant numbers in the regional economy. The expert responded that such an individual could perform sedentary, unskilled clerical occupations, including charge account clerk, order clerk and telephone quotation clerk jobs (3,000 jobs in Wisconsin). In the second hypothetical, the administrative law judge described the individual as able to do sedentary work with the ability to perform only simple, unskilled routine tasks. Utities responded that this individual could perform some

9

bench work assembly jobs, namely final assembler, fishing reel assembler and lamp shade assembler (5,000 jobs in Wisconsin). AR 419-20. In the third hypothetical, the administrative law judge limited the individual to no repetitive fine motor tasks and no repetitive overhead reaching. Utities responded that the jobs he had listed required frequent but not constant reaching, handling and fingering. Utities stated that his testimony was consistent with the information in the <u>Dictionary of Occupational Titles</u>. AR 421. Plaintiff's lawyer asked Utities whether a person who had flareups two to three times a month would be able to work on a full-time basis. Utities responded that such an individual would not be able to work. AR 421-22.

E. <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. <u>See</u> 20 C.F.R. § 404.1520. At step one, he found that plaintiff had not engaged in substantial gainful activity since July 1, 2003. At step two, he found that plaintiff had severe impairments of myasthenia gravis, lupus, a knee pain disorder, obesity, asthma, gastroesophageal reflux disease and depression. The administrative law judge found that plaintiff did not have a medically determinable mental impairment. AR 16-17.

The administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  In reaching this conclusion, he relied on the testimony of Dr. Steiner, finding it credible and persuasive.  AR 17.

Next, the administrative law judge determined that plaintiff had the residual functional capacity to perform sedentary work with no high exposure to pollutants.  AR 17. The administrative law judge noted that although plaintiff's impairments could reasonably be expected to produce symptoms, her subjective complaints concerning the severity of her symptoms and limitations were not entirely credible.  AR 19.

At step four, the administrative law judge found that plaintiff had no past relevant work. AR 19.  Relying on Utities's testimony, the administrative law judge found at step five that an individual of plaintiff's age, education, work experience and residual functional capacity could perform the requirements of representative occupations, namely order clerk and telephone quotation clerk.  He also determined that Utities's testimony was consistent with the information contained in the Dictionary of Occupational Titles.  Accordingly, the administrative law judge found that plaintiff was not disabled.  AR 21.

OPINION

A.  <u>Standard of Review</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  <u>Clifford v. Apfel</u>, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  <u>Edwards v. Sullivan</u>, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, <u>id.</u>, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  <u>Steele v. Barnhart</u>, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).

12

B. <u>Listed Impairments</u>

Plaintiff contends that the administrative law judge erred because in his decision, he did not identify the applicable listings and relied on the medical expert's testimony without explaining how plaintiff's impairments of lupus and myasthenia gravis failed to meet or equal the applicable listings. In support, plaintiff cites § 1-2-5-39 of the Hearings, Appeals and Litigation Law Manual (HALLEX), promulgated by the Social Security Administration Office of Disability Adjudication and Review, which requires an administrative law judge to ask the medical expert to identify the listings he considered, analyze the medical record and give his opinion on whether the plaintiff's impairments meet the listed impairments. Although the HALLEX manual is not binding on the agency and has no legal force, <u>Schweiker v. Hansen</u>, 450 U.S. 785, 789 (1981); <u>Parker for Lamon v. Sullivan</u>, 891 F.2d 185, 190 (7th Cir. 1989), the Court of Appeals for the Seventh Circuit has held that remand may be required when an administrative law judge fails to discuss or even cite a listing and undertakes only a perfunctory analysis. <u>Brindisi ex rel. Brindisi v. Barnhart</u>, 315 F.3d 783, 786 (7th Cir. 2003). However, in <u>Brindisi</u>, the court recognized that "even a 'sketchy opinion' is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." <u>Id.</u> at 787 (citation omitted). It is always the plaintiff's burden to show that her impairments meet or medically equal a listing. <u>Sullivan v. Zebley</u>,

13

493 U.S. 521, 530-31 (1990); <u>Scheck v. Barnhart</u>, 357 F.3d 697, 700 (7th Cir. 2004);

<u>Clifford</u>, 227 F.3d at 868.

 Plaintiff is correct that neither the administrative law judge nor the medical expert identified any listing by number.  However, at the beginning of the hearing, plaintiff's lawyer stated in the presence of the medical expert and the adjudicator that plaintiff met or equaled the listings for lupus and myasthenia gravis.  AR 372.  It is clear from the record and hearing transcript that these are the only listings the medical expert considered.  Plaintiff criticizes the administrative law judge for his unexplained reliance on Steiner's opinion with respect to the listings.  Although the administrative law judge's questioning of Steiner at the hearing and his written explanation of Steiner's opinion are not as thorough as they could have been, I am able to discern what listings the expert considered and the medical evidence on which he based his opinion.  As long as Steiner's opinion is supported by substantial evidence in the record, the administrative law judge could rely on it in reaching his step three determination.  20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii) (administrative law judge may ask for opinion from medical expert on nature and severity of impairment and on whether impairment equals listed impairment).

1.  <u>Listing §14.02, systemic lupus erythematosus</u>

Listing § 14.02 requires the involvement of at least one of several specified conditions, or alternatively, "lesser involvement" (at least moderate severity) of at least two of the listed organ or body systems and significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise and weight loss. Muscle involvement is evaluated under the criteria in § 14.05, which in part require severe shoulder or pelvic muscle weakness or less severe muscle weakness with impaired swallowing with dysphagia or impaired respiration resulting from intercostal and diaphragmatic muscle weakness. Steiner testified that plaintiff had only mild to moderate muscle weakness in her wrist and finger extensors with none of the other requisite conditions. The record supports this finding. Apart from general complaints of muscle weakness and fatigue, plaintiff has not reported any of the other required symptoms or even claimed that she had them.

Joint involvement must meet the criteria under §1.00, which in part define functional loss as involvement of one major peripheral joint in each upper extremity, resulting in the inability to perform fine and gross movements on a sustained basis. Section 1.00B(2)(c) defines inability to perform gross and fine movements as "an extreme loss of function of both upper extremities"; examples include "the inability to prepare a simple meal and feed oneself" and "take care of personal hygiene." Although plaintiff testified that she had trouble with gross and fine manipulation when her lupus flared up, Steiner testified that none of the record evidence documented these symptoms and the administrative law judge

15

found plaintiff's complaints not entirely credible.  Steiner stated that although plaintiff reported regular joint pain, she did not have synovitis, loss of range of motion or inflammatory changes.  He also testified that plaintiff had no pulmonary, vascular, liver or bowel problems caused by lupus.  These findings are well founded and supported by the record.

Although plaintiff alleges that she suffers loss of fine motor function, her own testimony reveals that she is able to feed, bathe and dress herself, albeit with some difficulty when her lupus flares up.  Plaintiff claims that her flareups occur most days of the month.  However, a review of the medical record indicates that plaintiff's lupus was "relatively quiet" and inactive after July 1, 2003.  Even when plaintiff complained to Goellner in 2006 that her lupus was worse, he indicated that it was in a "questionable" state of activation and referred her to Dr. Leff, who found no evidence that plaintiff even had lupus.  Considering the severity of joint involvement necessary to meet the listing, it was reasonable for Steiner to conclude from the record that plaintiff did not meet or equal the listing criteria for this symptom.

2.  Listing § 11.12, myasthenia gravis

Listing § 11.12 requires significant difficulty with speaking, swallowing or breathing while on prescribed therapy or significant motor weakness of muscles of extremities on

16

repetitive activity against resistance while on prescribed therapy.  Steiner found only one report of mild to moderate weakness.  He pointed out that plaintiff's nerve conduction studies, repetitive testing and repeated examinations, including repetitive stimulation of the eyelids, were normal or unremarkable.  Steiner found the findings concerning myasthenia to be minimal.  The record supports this finding.

Plaintiff received her myasthenia gravis diagnosis in early 2004.  In February 2004, she had a thymectomy performed and healed well after the surgery.  Although plaintiff experienced some mild to moderate muscle weakness in late 2004, the results of nerve conduction studies and repetitive stimulation tests were normal.  In January 2005, Dr. Stevens found that plaintiff was doing well and Dr. Ytterberg concluded that her myasthenia gravis was relatively quiet.  In March 16, 2005, Dr. Stevens indicated that plaintiff's myasthenia gravis remained asymptomatic and that she found the Naproxen helpful. Plaintiff received no further treatment for the disease after this point.  In 2006, Goellner questioned whether plaintiff had myasthenia gravis.  As with plaintiff's lupus, the only evidence supporting her assertion that she meets or equals the listing are her own subjective complaints, which the adjudicator found not credible.

In sum, I find that because Steiner reviewed and considered the important medical evidence in relation to Listings § 14.02 and § 11.12, it was reasonable for the administrative law judge to rely on his testimony to determine that plaintiff's impairments did not meet or

17

equal a listing.  Moreover, because Steiner referred to the medical evidence in the record, I can trace the administrative law judge's reasoning in determining that plaintiff's impairments did not equal the listings.  Therefore, even though the administrative law judge did not specifically mention the listings he considered or thoroughly articulate the reasons supporting the expert's finding, plaintiff has not pointed out any substantial evidence that the administrative law judge failed to consider that would show that she meets or medically equals a listing.  Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004) (in itself, administrative law judge's failure to refer explicitly to listing does not necessitate remand); cf. Ribaudo v. Barnhart, 458 F.3d 580, 583-84 (7th Cir. 2006) (administrative law judge failed to mention specific listing or evaluate several pieces of evidence favorable to claimant in meeting listing criteria); Barnett v. Barnhart, 381 F.3d 664, 670 (7th Cir. 2004) (administrative law judge misunderstood record and failed to seek expert opinion to clarify evidence); Brindisi, 315 F.3d at 786 (administrative law judge made no mention of three applicable listings or strong evidence supporting claimant).  Accordingly, remanding this case for a more thorough step three analysis would be a pointless exercise.  Accord Scheck, 357 F.3d at 700-01 (remand for more detailed examination of medical evidence not required where plaintiff did not present substantial evidence to contradict agency's position on issue of medical equivalency).

C.  Obesity

Plaintiff contends that the administrative law judge failed to properly evaluate the evidence in the record that she was obese, as required by Social Security Ruling 02-1p: Policy Interpretation Ruling Titles II and XVI:  Evaluation of Obesity, 67 Fed. Reg. 57859 (2002).  In this case, the administrative law judge found that plaintiff was severely impaired by obesity but did not make any specific finding as to how it affected her residual functional capacity.  However, "a failure to explicitly consider the effects of obesity may be harmless error."  Prochaska v. Barnhart, 454 F. 3d 731. 736 (7th Cir. 2004).  In Prochaska, the court of appeals found that because the administrative law judge's decision was predicated upon the opinions of physicians who discussed the plaintiff's weight, and because plaintiff had not pointed to any evidence suggesting that her obesity significantly aggravated her physical impairments or contributed to her physical limitations, the administrative law judge's failure to comply with SSR 02-1p was harmless.  Id.  The court reached the same conclusion in Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004), explaining:

> Any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case.  See Keys v. Barnhart, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review to ALJ's determination).  Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk.  Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity.  Thus, although the ALJ did not

19

explicitly consider Skarbek's obesity, it was factored indirectly
into the ALJ's decision as part of the doctor's opinions.

As in <u>Skarbek</u> and <u>Prochaska</u>, no harm resulted from the administrative law judge's failure to address explicitly plaintiff's obesity in his residual functional capacity assessment. It is clear from the decision that the administrtaive law judge was aware of plaintiff's obesity, insofar as he found it to be a severe impairment. Further, Steiner considered plaintiff's obesity ind concluding that she could perform sedentary work. The administrative law judge relied on Steiner's opinion in fashioning plaintiff's residual functional capacity. Although plaintiff generally asserts that her obesity aggravates her other impairments, she cites to no evidence to support this contention or otherwise suggests that it limits her activities. For these reasons, it would be pointless to remand this case for explicit consideration of plaintiff's obesity. <u>Gentle v. Barnhart</u>, 430 F.3d 865, 868 (7th Cir. 2005) ("Once [obesity's] causal efficacy is determined, it drops out of the picture.").

## D. Credibility

Plaintiff challenges the administrative law judge's determination that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1)

20

determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck, 357 F.3d at 702.  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

21

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska, 454 F.3d at 738; Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck, 390 F. 3d at 505.

In assessing plaintiff's credibility, the administrative law judge found that the objective medical evidence showed that plaintiff's symptoms varied in severity and that plaintiff had extended periods of considerable improvement.  For example, the administrative law judge noted that in January 2007, plaintiff reported feeling quite healthy before her motor vehicle accident.  This is consistent with plaintiff's large gaps in treatment and the 2006 medical reports that described plaintiff's lupus and myasthenia gravis as inactive and possibly nonexistent.

22

In addition to the lack of objective findings, the administrative law judge considered the other relevant factors bearing on plaintiff's credibility, including medication side effects, work history and daily activities.   Specifically, he found that plaintiff experienced improvement with prednisone, Naproxen and Celexa; was able to care for her six-week old baby and on good days, use the computer, watch a movie and talk on the telephone; and was able to work part-time in 2003, 2004 and 2007.  Plaintiff argues that none of these factors establish that she is able to work full time on a consistent basis and asserts that the administrative law judge failed to consider her testimony that she experiences significant fatigue and difficulty with fine manipulation up to 20 days a month.   However, the administrative law judge specifically discussed the "wax and wane nature of [plaintiff's] symptoms" and found that her worst episodes have not "been sustained or result[ed] in a need for permanent restrictions."  AR 18.  Substantial evidence in the record supports these findings.  Although plaintiff's daily activities and work history do not prove her ability to work in themselves, they do contradict the reported severity and frequency of her symptoms. Plaintiff's ability to help care for her newborn baby, perform some part-time work, care for herself and maintain some social activities are inconsistent with her reports that her impairments incapacitate her 20 days out of each month.

Plaintiff has not demonstrated that the administrative law judge was patently wrong. He built an accurate and logical bridge between the evidence and his conclusion that

plaintiff's statements considering her limitations were not fully credible.  Accordingly, this is not one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.

D.  <u>Residual Functional Capacity</u>

Plaintiff challenges the administrative law judge's finding that she could perform sedentary work with no exposure to a high concentration of pollutants.  A claimant's "residual functional capacity" is the "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  Social Security Ruling 96-8p; <u>see</u> <u>also</u> 20 C.F.R. § 404.1545.  A "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule."  <u>Id</u>.  At the disability hearing stage, the responsibility for determining the claimant's residual functional capacity lies with the administrative law judge, who must consider all relevant medical and other evidence in the record, including statements from medical sources, the claimant and others.  20 C.F.R. §§ 404.1545, 404.1546.

In reaching his decision that plaintiff could perform sedentary work, the administrative law judge relied on the opinions of Steiner and the state agency physicians. Although the state agency physicians concluded that plaintiff could perform light work, the administrative law judge gave plaintiff the benefit of the doubt and limited her to sedentary

24

work.  Although plaintiff disagrees with the adjudicator's finding, she has cited no medical evidence in the record showing that she was unable to perform sedentary work.  The only evidence concerning plaintiff's limitations was plaintiff's own testimony, which the administrative law judge found not credible.  Plaintiff points to no medical evidence or opinion from her treating physicians that the administrative law judge failed to consider and assess.  In fact, as previously discussed, the objective medical evidence supports the conclusion that plaintiff's impairments are not disabling.

Plaintiff takes issue with the administrative law judge's finding that she had no restrictions in her abilities to reach or perform fine or gross manipulation.  She contends that the administrative law judge should have consulted with one of her treating physicians or ordered a consultative examination in order to meet his responsibility to develop a full and fair record.  Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000).  However, plaintiff has the burden of providing the medical evidence necessary to establish her disability.  20 C.F.R. §§ 404.1512(c) and 416.912(c).  An administrative law judge does not need to seek out a medical source or order a consultive examination unless he is unable to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1512(e) and 416.912(e) (administrative law judge will consult medical source when evidence is inadequate to determine disability); 20 C.F.R. §§ 404.1519a(b) and 416.919a(b) (administrative law judge may order consultative examination "when the evidence as a whole, both medical and nonmedical, is not sufficient

25

to support a decision on [the] claim").  The administrative law judge had the benefit of the opinions of two state agency psychologists and a medical expert and he had records from plaintiff's treating physicians to help him evaluate plaintiff's residual functional capacity. The evidence of record was adequate to support a finding of not disabled.  Therefore, the administrative law judge acted within his discretion in deciding not to seek further medical information in making his step four finding.  <u>Luna v. Shalala</u>, 22 F.3d 687, 692 (7th Cir. 1994) (court "generally respects the ALJ's reasoned judgment" regarding how much evidence needed to make finding about disability).  Plaintiff has not shown that the administrative law judge erred in making his residual functional capacity assessment.

### E.  Step Five

Plaintiff challenges both the administrative law judge's third hypothetical and the expert's response as vague.  However, as defendant argues, this hypothetical is immaterial because the administrative law judge did not find that plaintiff had the restrictions included in that hypothetical, namely no repetitive fine motor tasks and no repetitive overhead reaching.  The administrative law judge's residual functional capacity finding was supported by substantial evidence making any error concerning the third hypothetical question harmless.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security is AFFIRMED and plaintiff Sally A. Sundeen's appeal is DISMISSED. The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 21st day of May, 2009.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

27